UNITED STATES of America,
Plaintiff,

v.

Paul GUZMAN, Defendant.

No. 71 Crim. 620.

United States District Court,
S. D. New York.

Jan. 10, 1972.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for United States of America; George E. Wilson, Sp. Asst. U. S. Atty., S.D.N.Y., of counsel.

Michael David Ratner, and di Suvero, Meyers, Oberman & Steel, New York City, for defendant; Daniel L. Meyers, New York City, of counsel.

METZNER, District Judge:

The defendant, Paul Guzman, has been indicted for violations of the federal Selective Service laws, in that it is charged that he refused to report for a physical examination and refused to report for induction. 50 U.S.C. App. § 462(a); 32 C.F.R. §§ 1628.16, 1632.14. He moves for an order directing that a hearing be held to determine whether the grand jury which indicted him or the panel from which the petit jury will be chosen to try him has been selected in violation of the Federal Jury Selection and Service Act [the Act], 28 U.S.C. § 1861 et seq., and the Fifth and Sixth Amendments to the United States Constitution. In addition, defendant asks for discovery of certain jury records, dismissal of the indictment, and a stay in the prosecution of his case until the above requested hearing has been held.

The Act requires that each United States district court devise and place into operation a written plan for random selection of grand and petit jurors. 28 U.S.C. § 1863(a). The plan must assure that grand and petit juries in the district be selected at random from a fair

cross-section of the community and that no citizen be excluded from jury service on account of race, color, religion, sex, national origin, or economic status. §§ 1861, 1862. 21 years is the minimum age for jury service. § 1865(b) (1).

Prospective jurors are to be chosen from voter registration lists or lists of actual voters within the district. However, the plan must prescribe some other source of names in addition to voter lists where necessary to foster the policy and protect the rights secured by the Act. § 1863(b) (2).

A master jury wheel is created into which the names of those randomly selected are placed, and which is emptied and refilled periodically at times specified in the plan. § 1863(b) (4). Names are drawn at random from the master jury wheel and those determined to be qualified and not exempt or excused pursuant to the district court plan are placed into a qualified jury wheel. The qualified jury wheel is the source from which grand and petit juries are selected. § 1866(a).

A defendant in a criminal case may challenge the district court's jury selection plan on the ground that it substantially fails to comply with the provisions of the Act. § 1867(a). He is entitled to an evidentiary hearing if his moving papers are accompanied by a sworn statement of facts which, if true, would constitute a violation of the Act. § 1867(d). The defendant may discover and inspect the jury records of the district court if necessary for the preparation or presentation of his motion. § 1867(f).

The Southern District Plan, which was formulated pursuant to the Act, went into effect on December 22, 1968. Defendant's objections to the Plan are threefold. He first claims that by setting a minumum age requirement of 21 years the Plan unlawfully excludes persons between the ages of 18 and 21 from serving on juries. Defendant argues that these people have a constitutional right to sit on juries, and that exclusion of them denies him an impartial jury

chosen from a fair cross-section of the community.

Defendant's second claim is based on the fact that the Plan provides for emptying and refilling the master jury wheel every four years. Defendant contends that the Act mandates refilling every two years. He argues that the four-year provision has resulted in the exclusion of persons between the ages of 21 and 24 because the master wheel in the Southern District was last filled in 1968. Persons who were then 21 years of age are now 24.

Defendant's final claim is that use of voter registration lists as the *sole* source of names for jurors in the Southern District has caused a substantial underrepresentation of young persons 24 to 30 because these persons have a significantly lower registration rate than those over 30 years of age.

 Although the defendant challenges the Southern District Plan under both the Act and the Constitution, the standards embodied in the Act embrace and go beyond the constitutional requirements. See Fay v. New York, 332 U.S. 261, 287, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); United States v. Leonetti, 291 F.Supp. 461, 473 (S.D.N.Y.1968). A challenge to the Plan under the Act, as opposed to a constitutional challenge, need not show that the defendant is a member of the allegedly excluded group or that he has been prejudiced by the exclusion. H.R. #1076, 1968 U.S.Code Cong. & Adm.News, Vol. 2, p. 1806; Thiel v. Southern Pacific Co., 328 U.S. 217, 225, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); United States v. Bryant, 291 F.Supp. 542, 547 (D.Me.1968). Furthermore, the defendant may challenge the selection process even though the particular jury drawn from the questioned pool be unobjectionable. Thiel v. Southern Pacific Co., *supra*, 328 U.S. at 225, 66 S.Ct. 984; United States v. Dennis, 183 F.2d 201, 216 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L. Ed. 1137 (1951). Finally, the resolution of the statutory challenge necessarily embraces a resolution of any constitu-

tional claims. See United States v. Greenberg, 200 F.Supp. 382, 387 (S.D. N.Y.1961). Therefore, we need not consider separately the constitutional grounds of challenge asserted by the defendant. If the Plan satisfies the statutory standard, the Constitution is also satisfied.

A defendant in a criminal case is entitled to a jury drawn from "a fair cross section of the community in the district or division wherein the court convenes." § 1861; Thiel v. Southern Pacific Co., *supra;* United States v. Butera, 420 F.2d 564 (1st Cir. 1970). It is not necessary that the jury actually chosen be representative of the community, but only that the source of names of prospective jurors and the selection process be reasonably designed to produce a fair cross-section. United States v. Van Allen, 208 F.Supp. 331, 334 (S. D.N.Y.1962); H.R. #1076, *supra* at p. 1805.

The crux of the inquiry is whether, in the source used in the selection of juries, there has been systematic or intentional exclusion of any cognizable group or class of qualified citizens. Thiel v. Southern Pacific Co., *supra,* 328 U.S. at 220, 66 S.Ct. 984; Thomas v. Texas, 212 U.S. 278, 283, 29 S.Ct. 393, 53 L.Ed. 512 (1909); Camp v. United States, 413 F.2d 419, 421 (5th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969). Thus, selection systems which exclude identifiable racial groups or social or economic classes are vulnerable to attack. See Thiel v. Southern Pacific Co., *supra;* Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946); Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L. Ed. 1074 (1935). However, perfectly proportional representation is not required, since no source list will be an exact statistical mirror of the community. United States v. DiTommaso, 405 F.2d 385, 389 (4th Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (1969); United States v. Dennis, *supra,* 183 F.2d 201 at 224. The mere

fact that a jury selection system is imperfect does not make it invalid. Swain v. Alabama, 380 U.S. 202, 209, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

If it is ascertained, however, that any cognizable group is *substantially* under-represented in the source of names, systematic or intentional exclusion can be inferred. United States v. DiTommaso, *supra.* The test is to compare the degree of representation of a particular group to that group's percentage of the population. United States v. Butera, *supra,* 420 F.2d at 569. The cases, however, reveal no precise limits beyond which substantial under-representation will consistently be found. The lowest percentage of under-representation is found in the *Butera* case, *supra,* where the court held that a 30% under-representation of women raised an inference of unlawful discrimination.

The major problem raised by defendant's challenge is determining whether his asserted age groups are "cognizable groups." While certain racial and economic groups have been held to be "cognizable groups" for purposes of jury challenges, the cases have dealt gingerly with the methodology used to determine whether other groups are "cognizable." Nevertheless, various critical factors can be gleaned from the opinions.

A group to be "cognizable" for present purposes must have a definite composition. That is, there must be some factor which defines and limits the group. A cognizable group is not one whose membership shifts from day to day or whose members can be arbitrarily selected. Secondly, the group must have cohesion. There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process. Finally, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members

are involved. That is, the group must have a community of interest which cannot be adequately protected by the rest of the populace. See United States v. Greenberg, *supra*, 200 F.Supp. at 391.

*First Claim: Exclusion of 18-to-21 Year-Olds*

Turning now to defendant's specific objections to the Southern District Plan, his first claim is based on the exclusion of young persons 18 to 21 years of age. He contends that the Plan violates the "fair cross section" test by intentionally excluding the cognizable group of 18-to-21-year-olds, and that it violates the constitutional right of 18-to-21-year-olds to serve on juries. Defendant was 20 years old at the time of indictment.

Defendant's argument is that the right to serve on juries is analogous to the right to vote. He claims that both are "fundamental rights" which cannot be denied without a "compelling governmental interest" for doing so. He contends that since 18-to-21-year-olds have been given the right to vote, there can be no compelling governmental interest in denying them the right to serve on juries.

Defendant also argues that because 18-to-21-year-olds have been found to be a cognizable group for purposes of voting, they must be held to be a cognizable group for purposes of sitting on juries.

Finally, he contends that the 21-year minimum age requirement in the Act, § 1865(b) (1), is not a fixed limitation. He argues that it should be interpreted as establishing a sliding age scale conforming with the minimum age for voting, which has been lowered to 18 by the 1970 Voting Rights Act, 42 U.S.C. § 1973bb–1, and the Twenty-sixth Amendment.

▮ There is simply no justification for defendant's claim that merely because 18-to-21-year-olds have been given the right to vote, the Constitution compels that they be given the right to serve on juries. The right to vote and the right to sit in judgment of others have certain fundamental differences which cannot be overlooked. The act of voting is a personal expression of favor or disfavor for particular policies, personalities, or laws. The voter is motivated by his personal self-interest, or what he considers best for the general populace.

However, when one sits on a jury, he is required to accept and apply the law as the judge gives it to him, whether or not he agrees with it and no matter what his personal feelings are toward the parties in question. He must have the maturity and understanding to do what may often be an unpleasant task.

Every case which has dealt with the problem has concluded that 18-to-21-year-olds do not have a constitutional right to serve on juries. United States v. McVean, 436 F.2d 1120 (5th Cir. 1971); United States v. Tantash, 409 F.2d 227 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 211, 23 L.Ed.2d 754 (1969); George v. United States, 196 F.2d 445 (9th Cir.), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952); United States v. Waddy, 71 Cr. 641 (S.D.N.Y. Nov. 16, 1971); United States v. Deardorff, 71 Cr. 111 (S.D.N.Y. Oct. 5, 1971); United States v. Gargan, 314 F.Supp. 414 (W.D.Wis.1970). These cases point out that it is perfectly feasible for 18-to-21-year-olds to have a constitutional right to express their opinions, attitudes, and philosophies in the election process, while not having the right to sit in judgment of others.

At the present time there are before Congress two bills which would lower the minimum age for jury service to 18. H.R. 8829; S. 1975. Many of the same factors which led to lowering the voting age have been emphasized in considering whether to lower the age for jury service. However, this does not mean that lowering the age for the one requires lowering it for the other. See Report of the Committee on the Operation of the Jury System, Judicial Conference of the United States, October 1971.

■ As for defendant's contention that the Act should be read to establish the same minimum age for jury service as for voting, the short answer to that is that the Act is clear on its face. It sets a 21-year minimum age requirement. If Congress believed that the Act provided for a sliding minimum age scale, it would not now be attempting to amend the Act to lower the age.

■ Finally, defendant's contention that persons 18 to 21 years of age form a cognizable group for purposes of jury selection must be rejected. Defendant has totally failed to establish that the views, attitudes, or experiences of these young people differ in any appreciable way from those of young people a few years older. Nor has defendant shown that the interests of 18-to-21-year-olds cannot be adequately represented and protected by people a few years older.

*Second Claim: Exclusion of 21-to-24 Year-Olds*

■ The defendant's second claim is based on the fact that the Southern District Plan provides for emptying and refilling the master jury wheel only every four years. Since the wheel was last refilled in 1968, young persons 21 to 24 years of age have been excluded from the juries which indicted and which will try defendant. Defendant contends that the Act requires that the wheel be refilled at least every two years and that the Plan therefore violates the Act.

A similar contention was made and dismissed in *Deardorff, supra*. In addition, the Fifth Circuit has recently upheld a jury selection plan which provided for refilling the master jury wheel every *five* years. United States v. Kuhn, 441 F.2d 179 (5th Cir. 1971).

Defendant's argument is grounded on § 1869(c), which defines "voter registration lists" as:

"the official records maintained by State or local election officials of persons registered to vote in either *the most recent* State or *the most recent*

Federal general election. . . ." [Emphasis added].

Defendant claims that this provision reflects a desire by Congress to require the master jury wheel to be refilled every two years after congressional elections. In support of his contention, he cites a passage from the House Report on the Act, which states that the above section is meant to "insure that the list used will in any event not be more than 2 years old." H.R. #1076, *supra* at p. 1807.

Defendant, however, has misconstrued both the Act and the House Report. According to § 1863(b) (4), "The plan shall provide for *periodic* emptying and refilling of the master jury wheel at specified times." [Emphasis added]. The purpose of § 1869(c) is merely to insure that at the time chosen for refilling the wheel, the most recent voter registration list is to be used. United States v. Deardorff, *supra* at 20–21.

As the House Report points out, prior bills were found objectionable because they provided for refilling the master jury wheel at designated times, and the purpose of § 1863(b) (4) was to allow each district court to select the time for refilling which it deemed appropriate. H.R. #1076, *supra* at p. 1800. Surely if Congress had meant to require refilling every two years, it would have explicitly so stated.

Of course, there must be some time lag no matter what the period is. Even under defendant's contention it would be possible for 21 and 22-year-olds to be excluded from the jury.

*Third Claim: Under-Representation of "Young Persons"*

Defendant's final objection to the Plan is that use of voter registration lists as the sole source of names for jurors has caused a substantial under-representation of young persons aged 24 to 30 because these persons have a significantly lower registration rate than those over 30 years of age. He claims that this results in the systematic exclusion

of a cognizable group, to wit, "young persons."

Defendant has exhibited some confusion in defining the precise limits of his asserted group. At one point he speaks of three "cognizable" groups: one 18 to 21 years of age, another 21 to 24 years of age, and a third 24 to 30 years of age. In another place he refers to the cognizable group of young persons aged 21 to 30. And at still another point he seems to be including all persons 18 to 30 in his group.

This indefiniteness typifies the difficulty one gets into in trying to establish that "young people" constitute a "cognizable group." There is no single factor or group of factors other than age which defines the group. The cases reflect attempts by defendants to vitiate plans because of the claimed failure to adequately represent arbitrarily drawn age groups. United States v. Kuhn, *supra* (an asserted group of "young adults" 21 to 23 years of age); United States v. Butera, *supra* (an asserted group of "young adults" between 21 and 34 years of age); United States v. DiTommaso, *supra* (an asserted group of persons 21 to 29 years of age); King v. United States, 346 F.2d 123 (1st Cir. 1965) (an asserted group of "young persons" 21 to 25 years of age); United States v. Deardorff, *supra* (an asserted group of young persons 21 to 25 years of age); United States v. Gargan, *supra* (an asserted group of 21-to-26-year-olds); United States v. Bryant, *supra* (an asserted group of those 21 to 29 years old); United States v. Leonetti, *supra* (an asserted group of "young adults" 24 to 40 years of age); United States v. Cohen, 275 F.Supp. 724 (D. Md.1967) (asserted groups of persons between the ages of 21 and 30 and between the ages of 31 and 40). Only in *Butera* was the group found to be "cognizable."

 Defendant has not explained why he has selected the age of 30 as a cut-off rather than the age of 26 or 33. He has presented no rationale for his age grouping. The mere fact of similarity in age cannot, by itself, be sufficient to define a cognizable group. If it were, any jury selection system could be successfully attacked by a strategic drawing of age group lines.

Among any age group there will be vast variations in attitudes, viewpoints, and experiences. The fact that two persons are the same age does not necessarily give them a community of interest. And although we hear much talk of the "generation gap," it is impossible to define that gap with any precision, as the defendant has tried to do.

 In accordance with the long line of cases cited above, this court cannot accept the proposition that members of arbitrarily drawn age brackets necessarily constitute valid categories for measuring the legality of a jury selection system.

Defendant has failed to make a preliminary showing under any of his claims that he is entitled to an evidentiary hearing. § 1867(d).

Defendant's motion is denied in all respects.

So ordered.