**UNITED STATES of America,**
**Appellee,**

v.

**Paul GUZMAN, Appellant.**

**No. 153, Docket 72–1524.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1972.

Decided Nov. 8, 1972.

---

John W. Nields, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., George E. Wilson, Asst. U. S. Atty., on the brief), for appellee.

Michael D. Ratner, New York City (Daniel L. Meyers, New York City, on the brief), for appellant.

Before HAYS, OAKES and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction entered against Paul Guzman on March 15, 1972 in the United States District Court for the Southern District of New York after a three day trial before United States District Court Judge Charles M. Metzner and a jury.

Guzman was found guilty of both counts of an indictment which charged him with having failed to report for his Armed Forces physical examination and for induction into the United States Armed Forces. Each offense is a violation of the Military Selective Service Act of 1967, 50 U.S.C. § 462(a). Judge Metzner sentenced appellant to two years imprisonment on each of the two counts, the sentences to run concurrently. Appellant was released on bail pending the outcome of this appeal.

The only issue on appeal is a challenge to the system of selecting grand and petit jurors in the Southern District of New York at the time of appellant's indictment and trial. Prior to his trial, Guzman raised this issue before the trial court and moved for an order directing that a hearing be held to determine whether the grand jury that indicted him and the panel from which his petit jury would be selected were chosen in violation of the Federal Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., and the Fifth and Sixth Amendments to the Constitution of the United States. He also asked for discovery of certain jury records, dismissal of the indictment and a stay in the prosecution of his case until the requested hearing was held.[1] The trial court rejected all of his claims and denied his motion. 377 F.Supp. 140 (S.D.N.Y.1972).

On appeal, Guzman again argues that the method by which his grand and petit juries were chosen denied him his right to be indicted and tried by juries drawn from a fair cross section of the community and denied him the equal protection of the law. His specific challenges are (1) that the Southern District Plan for Random Jury Selection, adopted pursuant to the Jury Selection Act,[2] man-

---

1. Under the Federal Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., a defendant in a criminal case may challenge the district court's jury selection plan on the ground that it does not comply with the provisions of the Act, § 1867. He is entitled to an evidentiary hearing if his moving papers are accompanied by a sworn statement of facts, which, if true, would constitute a violation of the Act, § 1867(d). The defendant may discover and inspect jury records of the district court "as may be necessary" in the preparation of his motion, § 1867(f).

2. The Act requires that a plan be formulated in each district for the selection of grand and petit juries, 28 U.S.C. § 1863. The plan must assure that the juries are selected at random from a fair cross section of the community and that no citizen is excluded from jury service on account of race, color, religion, sex, national origin or economic status, §§ 1861, 1862.

dates the use of voter registration lists as the sole source of names of people who ultimately will sit on the juries thus violating the Jury Selection Act because it results in an underrepresentation of people between the ages of 24 [3] and 30 since they tend to register in fewer numbers than older voters; (2) that he was denied equal protection of the law because at the time of his trial, 18 to 20 year olds had the right to vote but were not on jury lists; and (3) that he should have been allowed discovery of certain grand jury questionnaires and an evidentiary hearing in order to substantiate his allegations.[4]

The court below rejected all of the appellant's claims, basing its decision on its opinion that the asserted age groups (18 to 20 and 24 to 30) were not "cognizable groups" for the purposes of challenges

to jury selection procedures. 337 F. Supp. at 145–146. It therefore denied Guzman's motion for a hearing and for discovery, 337 F.Supp. at 146, and proceeded to trial.

■ We find it unnecessary to reach the issue of the "cognizability" of the asserted age groupings for the purposes of challenges to jury selection processes.[5] As far as the claim that youth between the ages of 24 to 30 are underrepresented as a result of the Southern District Plan, we note that the underrepresentation, if in fact there is such underrepresentation, does not result from systematic exclusion by those who oversee the jury selection procedure. See United States v. Agueci, 310 F.2d 817, 833–834 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963). At the time of appellant's in-

At the time of appellant's trial, 21 years of age was the minimum age for jury service, but by an amendment of April 6, 1972, 18 years of age was set as the minimum, § 1865(b)(1), 1972 U.S.Code Cong. & Admin.News 1303.

According to the Act, the plan devised by the district must provide for the selection of prospective jurors from either voter registration lists or lists of actual voters in the district, § 1863(b)(2). However, where necessary to "foster the policy and protect the rights secured" by the Act, the jury selection plan must prescribe an alternative source of names, § 1863(b)(2).

On December 22, 1968, the Southern District Plan went into effect. A random selection of names was taken from the 1968 voter registration lists for the district and these names were placed on a "master jury wheel." In turn, names were selected from the master jury wheel and those people found to be qualified for jury service and not exempt or excused had their names placed in a "qualified jury wheel" from which names are selected for grand and petit jury service.

3. Appellant selected 24 as the lower age limit because "it is the lowest possible age of anyone who was eligible to serve on appellant's grand or petit jury. All 18 to 21 year olds were, until recently, excluded by the Act and, as the names for juries were chosen in 1968, a person 21 in 1968 would be at least 24 at the time relevant to appellant's indictment and trial."

4. Appellant also claims that people between the ages of 18 and 20 had a *constitutional right* to serve on juries even prior to obtaining the right to vote through the Twenty-Sixth Amendment. We reject this contention and note the utter absence of authority supporting that proposition.

Appellant does not raise on appeal the question of whether the Jury Selection Act required the refilling of the master jury wheel every two years as appellant argued below or whether a refilling at four year intervals as provided by the Southern District Plan was permissible as the district court held. As a result of an amendment on April 6, 1972 the Act now states that the master jury wheel should be refilled every four years. 28 U.S.C. § 1863(b)(4), 1972 U.S.Code Cong. & Admin. News p. 1303.

5. Although we do not pass on the question of whether 18 to 20 year olds or 24 to 30 year olds or "youth" in general constitute "cognizable groups" for the purposes of challenges to jury selection plans, we do note that age is the only factor which defines such categories and despite talk of "generation gaps," there are great disparities in opinions, attitudes, experiences and life-styles among young people. Compare United States v. DiTommaso, 405 F.2d 385, 391 (4th Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1209, 22 L. Ed.2d 465 (1969) with United States v. Butera, 420 F.2d 564, 570 (1st Cir. 1970).

dictment and trial people between the ages of 24 and 30 (who possessed the other minimal qualifications) were eligible to vote in the Southern District and their names were included in the lists from which grand and petit jurors were taken if they chose to register.

The Jury Selection Act requires that grand and petit juries be selected from a random cross section of the community, 28 U.S.C. § 1861, and if this goal cannot be achieved through the use of voter (or voter registration) lists alone, the Act mandates the use of "other . . . sources of names . . . where necessary. . . ." 28 U.S.C. § 1863(b)(2). Therefore the question before us is whether the Southern District Plan violates the basic purpose of the Act, i. e., that juries should be drawn from a fair cross section of the community, so that other sources of names must be employed. We think not. In districts where obstacles are placed in the paths of certain citizens attempting to register to vote, the voting rolls must be supplemented to achieve a list reflecting a fair cross section of the community. But in the Southern District, where the asserted age group is entitled to register to vote and has done so (albeit in lower proportion than its percentage of the total population), we can find no systematic discrimination sufficient to require the use of alternative sources for jury lists.[6] See United States v. Agueci, supra at 834. It was not unreasonable for Congress to assume that ordinarily voter registration lists are sufficient sources for jury selection lists.

We find no merit in appellant's claim that the exclusion of 18 to 20 year olds from the grand jury which indicted him and from the petit jury which tried him was a denial of the equal protection of the law. This allegation resolves itself into the contention that 18 to 20 year olds should have been placed on jury lists as soon as they received the right to vote under the Twenty-Sixth Amendment.[7] The obvious impracticality of implementing such a scheme, especially in the Southern District, is a sufficient basis for affirmance of the decision below. No alternative list of 18 to 20 year olds is readily and practically available. Draft board lists can be obtained for the men above the age of 18 but such lists suffer from the infirmity that men register with their local board in the area in which they live when they turn 18, and the registrant keeps that local board despite subsequent changes of address (although he must notify his local board of any change of address). Other lists (which would have to be consulted for women at least) such as high school registration forms, driver's license records, etc. present innumerable administrative obstacles to their efficient use. No such difficulties exist in respect to the use of presidential voter registration lists.

Moreover, only six months elapsed between the date when the Twenty-Sixth Amendment took effect (June 30, 1971) and the commencement of appellant's trial (January 25, 1972).[8] That time span was certainly too short to implement appellant's suggestion. It was a

---

6. Age is not one of the factors which Congress singled out as a suspect category. The Act prohibits discrimination "on account of race, color, religion, sex, national origin or economic status." 28 U.S.C. § 1862. The House report on the bill that became the Act stated approvingly that anyone with the minimal qualifications to vote could have his name placed on the voter registration lists and hence become eligible for jury duty. H.Rep.No.1076, 90th Cong. 2d Sess. (1968), 1968 U.S. Code Cong. & Admin.News pp. 1792, 1795.

7. As indicated above, supra note 2, by the Amendment of April 6, 1972, 28 U.S.C. § 1865(b)(1), 1972 U.S.Code Cong. & Admin.News 1303, people between the ages of 18 and 21 were made eligible to serve on juries.

8. The indictment against appellant was filed on June 14, 1971—sixteen days *before* the Twenty-Sixth Amendment took effect.

permissible hiatus. See Glasser v. United States, 315 U.S. 60, 65, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The allegations of the complaint were therefore insufficient, even if true, to establish a "substantial failure to comply," 28 U.S.C. § 1867(d), with the Act's mandate that juries be "selected at random from a fair cross section of the community," 28 U.S.C. § 1861. Nor do they establish a violation of the United States Constitution. Therefore, a hearing was not required, 28 U.S.C. § 1867(d), and discovery of the grand jury questionnaires was not "necessary" to the preparation of a valid motion, 28 U.S.C. § 1867(f). We affirm the denial of the defendant's motion and the conviction which followed.