**UNITED STATES of America, Plaintiff,**

v.

**Whitney GREY et al., Defendants.**

**Crim. No. 73-13.**

United States District Court, W. D. Oklahoma, Criminal Division.

Feb. 21, 1973.

Opinion on Motion to Reconsider Feb. 26, 1973.

Jeff R. Laird, Ass't. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Vincent Knight, Arlene Tucker, Philip F. Horning, Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

Defendants move to dismiss the Indictment returned against them in this case claiming that the Grand Jury was not selected in accordance with law. Plaintiff denies this claim.

In summary, Defendants claim that the selection process was infected with error in five ways: (1) Failure to use the most recent voter registration list, (2) Granting excuses to certain classes of persons, (3) Systematic exclusion of certain classes of persons, (4) Lack of proportionate representation of certain classes of persons, and (5) Unconstitutionality of a one-year residency requirement of prospective jurors.

This Court adopted in 1968 a Plan for the Random Selection of Grand and Petit Jurors pursuant to the provisions of 28 U.S.C.A. § 1861 et seq. Said Plan is presently in force and the Grand Jury which indicted Defendants was selected pursuant to it. The Plan declares that voter registration lists represent a fair cross section of the community in the Western District of Oklahoma. It provides for drawing jurors for service after December 23, 1968 from such lists, for addition to the master jury box on order of any Judge of this Court as necessary and for emptying and refilling of the master jury box between July 1, 1972 and November 1, 1972. It makes available excuses upon request by eligible persons selected under the Plan.

By affidavit of the Clerk of this Court, Plaintiff shows that 7,100 names were placed in the master jury box in 1968 and that an additional 6,863 names were drawn in 1971 from voter registration lists in this District to replenish the master jury box.

Defendants claim a violation of 28 U.S.C.A. §§ 1863(b)(2) and 1869(c)

occurred when the most recent voter registration list used in a State or Federal general election was not used as the source for the master jury box. Defendants further claim that use of the 1972 voter registration lists is required by § 3(a) of PL 92–269 (April 6, 1972).

28 U.S.C.A. § 1869(c) defines a voter registration list as the official records of persons registered to vote in the most recent State or Federal general election. 28 U.S.C.A. § 1863(b)(2) directs that the plan to be adopted by the district court shall specify whether the names of prospective jurors shall be selected from voter registration lists or from lists of actual voters. Thus the Plan meets the Statutory requirements. But the Defendants contend that the two statutes, construed together, impose an affirmative duty on the Court to empty and refill the master jury box after every general election and to use the most recent voter registration list at each refilling. The Court finds no such requirement in the law and does not believe that the construction contended for by Defendants is reasonable or warranted. To hold as Defendants contend would render meaningless the provisions of 28 U.S. C.A. § 1863(b)(4) to the effect that the plan shall provide for periodic emptying and refilling of the master jury wheel at specified times. Arguments similar to that of Defendants were rejected in United States v. Ross, 468 F.2d 1213 (Ninth Cir. 1972). Defendants' argument in this regard is further contradicted by the 1972 amendment of 28 U.S. C.A. § 1863(b)(4) which added a requirement that the master jury wheel be emptied and refilled at intervals which cannot exceed four years. Thus, the law did not require before the amendment and presently, that the master jury box be emptied and refilled after every general election.

The advisory committee which drafted 28 U.S.C.A. § 1863(b)(4) in 1968 did not envision the requirement urged by Defendants. See United States v. Kuhn, 441 F.2d 179, at p. 181 (Fifth Cir. 1971). Neither did the House Judiciary Commit-

tee in its expression of views on the proposed legislation. 2 United States Code, Congressional and Administrative News (1968) 1792 at p. 1800. Legislative history shows beyond doubt that Congress did not intend that the master jury box be emptied after every general election and refilled using the voter registration list used in such general election.

■ Defendants next attack the granting of excuses to certain classes of persons called for jury duty who request such excuses. The Plan for this district designates persons over seventy years of age, active clergymen, women with children under ten years of age, active attorneys, active physicians, dentists and registered nurses, active school teachers and sole proprietors of businesses, among others as those who may request to be excused from jury service. Defendants, relying on the 1970 Census, state that persons falling within the above enumerated classes comprise more than 30% of the total population of Oklahoma over twenty-one years of age. Defendants claim that the granting of such excuses, which they characterize as "automatic", destroys the "fair cross section of the community" concept of 28 U.S.C.A. §§ 1861 and 1862.

28 U.S.C.A. § 1863(b)(5) directs that the plan shall specify those groups of persons or occupational classes whose members shall, on individual request therefor, be excused from jury service where the court finds and the plan states that such service entails undue hardship. Finally, this statute imposes the further requirement that such excuse will not be inconsistent with 28 U.S.C.A. §§ 1861 and 1862. The Court has so found in accordance with 28 U.S.C.A. § 1863(b) (5) and the Plan states such finding as required by 28 U.S.C.A. § 1863(b)(5).

■ In the above-referenced House Judiciary Committee report, the following language, explanatory of 28 U.S.C.A. § 1863(b)(5), appears:

"Such groups might include, among others, doctors, ministers, sole propri-

etors of businesses, and mothers of young children. Members of excused groups could serve if they desired to do so, but a request for an excuse must be granted." 2 United States Code, Congressional and Administrative News (1968) 1792 at p. 1800.

According to Defendants' own statistics, the groups mentioned by the House Judiciary Committee comprise more than half of the 30% which Defendants claim are automatically excused. More importantly, the "fair cross section of the community" concept applies only to the selection process and does not apply at any stage thereafter. This conclusion is based on the following observation of the House Judiciary Committee:

"If the voter lists are used and supplemented where necessary, and if the procedures outlined in the bill are otherwise rigorously followed it is no departure from the standards of the legislation that the qualified jury wheel, the venire or array, or the jury itself, may not reflect a community cross section. The act guarantees only that the jury shall be 'selected at random from a fair cross section of the community.' It does not require that at any stage beyond the initial source list the selection process shall produce groups that accurately mirror community makeup. Thus, no challenge lies on that basis." 2 United States Code, Congressional and Administrative News (1968) 1792, at p. 1794.

The Court opines that only discriminatory exclusion of any identifiable group from the opportunity for selection is interdicted by the "fair cross section of the community" concept relied on by Defendants and that the "exclusion" claimed by Defendants herein does not result from any governmental act but results solely from the will and choice of the individual juror involved as expressed by his affirmative request for excuse. The Court further concludes that the framers of the Jury Selection and Service Act of 1968 did not contemplate that excusal of certain classes of persons, of whom some are enumerated by the House Judiciary Committee, upon a previous finding of undue hardship and individual request therefor by the juror affected would interfere in any way with announced policy of the Act of selecting jurors from a fair cross section of the community. Defendants' challenge in this respect is wholly without merit.

■ Defendants next claim that certain classes of persons are systematically excluded from the selection process because such classes do not register to vote. In support thereof, they cite certain Bureau of Census statistics which pertain to the United States as a whole. Candidly admitting this fact, Defendants conclude that such statistics are "undoubtedly" an accurate reflection of voting practices in Oklahoma. While the Defendants may indulge in such speculation, the Court cannot do so but must base its conclusions on relevant factual data.

Defendants offer no proof directly bearing on voting practices in the State of Oklahoma. While this Court is obliged by 28 U.S.C.A. § 1863(b)(2) to supplement voter lists where necessary to foster the policy expressed in 28 U.S.C.A. § 1861, no proof in the record herein shows that such a necessity exists in Oklahoma. The House Judiciary Committee spoke on the matter and said:

"The bill uses the term 'fair cross section of the community' in order to permit minor deviations from a fully accurate cross section. The voting list need not perfectly mirror the percentage structure of the community. But any substantial percentage deviations must be corrected by the use of supplemental sources." 2 United States Code, Congressional and Administrative News (1968) 1792, at p. 1794.

The Defendants fail to show that the voter lists that were used to select the 13,-963 prospective jurors for this District contain cognizable groups whose pro-

portion to the whole is substantially different from that group's representation in the geographical areas covered by such voter lists. Speculative inferences do not suffice. Defendants' reliance on Broadway v. Culpepper, 439 F.2d 1239 (Fifth Cir. 1971); Pullum v. Greene, 396 F.2d 251 (Fifth Cir. 1968); Rabinowitz v. United States, 366 F.2d 34 (Fifth Cir. 1966) and King v. Cook, 298 F.Supp. 584 (Miss.1969) is misplaced. In the first three cited cases a subjective qualification of "uprightness and intelligence" intervened between the source and the selection process. There is no such intervention in the present case. The last case cited involved voter lists which, because of past voter registration practices, were held not adequately to represent a fair cross section of the community. No such condition is even alleged in the case at bar.

The use of voter registration lists is mandated by statute. The use of supplemental sources is mandated by a finding of necessity for their use by reason of inadequacy of the voter lists. Defendants have wholly failed to establish the existence of any such necessity. Defendants' claim in this regard is without merit.

■ Defendants next complain that certain cognizable groups are represented disproportionately in the jury wheel, the grand jury panel and the grand jury to the ratio of their representation in the total population. The Defendants request discovery under the provisions of 28 U.S.C.A. § 1867(f), apparently to assist them in establishing a prima facie case of noncompliance with the Jury Selection and Service Act of 1968. Before discovery may be granted, 28 U.S.C.A. § 1867(d) requires the moving party to file a sworn statement containing a statement of facts which, if true, would constitute a substantial failure to comply with the Act. Affidavits are attached to Defendants' Motion which contain statement of facts but the facts stated in no way demonstrate a failure to comply with the Act. Indeed, the affidavits demonstrate strict compliance with the Act. They wholly fail to mention any matter which would support any inference that some cognizable groups are disproportionately represented in the master jury box, the qualified jury wheel, the grand jury panel or the Grand Jury which indicted Defendants. It follows that Defendants' claim in this regard is without merit.

■ If Defendants are claiming that there must be proportionate representation of all cognizable groups in the master jury wheel, the grand jury panel and the Grand Jury, they are not supported in this claim by the cases. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Nolan v. United States, 423 F.2d 1031 (Tenth Cir. 1961), cert. den. 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85; United States v. Gordon, 455 F.2d 398 (Eighth Cir. 1972).

■ Finally, Defendants contend that the one year residency requirement of 28 U.S.C.A. § 1865(b)(1) is unconstitutional. They rely on cases which have invalidated various types of residency requirements and on 42 U.S.C.A. § 1973aa–1. In general, a residency requirement cannot stand unless it has a rational justification. While Defendants appear to recognize that the Sixth Amendment to the Constitution requires that the jury be of the State and district wherein the crime was committed, they argue, in effect, that no particular time of residency is required. The contention is not well taken. Defendants' argument that 28 U.S.C.A. § 1865(b)(1) is unconstitutional on its face has been heretofore considered and rejected. United States v. Ross, 468 F.2d 1213 (Ninth Cir. 1972); United States v. Duncan, 456 F.2d 1401 (Ninth Cir. 1972). This claim of Defendants is without merit.

The Court finds that Defendants' Motion to Dismiss the Indictment and Mo-

tion to Inspect, Reproduce, and Copy should be denied. Accordingly,

It is so ordered.

## ON MOTION TO RECONSIDER

Defendants, with permission of the Court, request the Court to reconsider its Order denying their attack on the manner in which the Grand Jury which indicted them was selected and their demand to inspect the selection records presently in the possession of the Clerk of this Court. Defendants contend that they have established a substantial failure of the selection procedures used to comply with the requirements of the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 et seq., for the following reasons: (1) Use of the 1968 voter registration lists. (2) Failure to use the 1970 voter registration lists. (3) Failure to empty and refill the master jury wheel between July 1, 1972 and November 1, 1972 as mandated by this Court's Plan for the Random Selection of Grand and Petit Jurors. Defendants also contend that they have a statutory right to discovery pursuant to 28 U.S. C.A. § 1867(f) and that no affidavit in support of their allegations of noncompliance is required prior to being permitted to inspect the jury selection records.

Defendants' arguments with respect to the use of the 1968 voter registration lists have been heretofore fully considered by the Court in its Order of February 21, 1973 and rejected on the basis that Defendants have misconstrued the meaning of 28 U.S.C.A. § 1863(b)(4). The House Judiciary Committee report, 2 United States Code, Congressional and Administrative News (1968) 1792, states in this connection:

"This section of S. 989, as amended, also eliminates another feature of predecessor bills to which objections were raised by many clerks, i. e., refilling of the master wheel at specified times. This bill requires only 'periodic' emptying and refilling of the wheel *at such times as each plan shall specify.*" (Emphasis added). 2 United States Code, Congressional and Administrative News (1968) 1792, at p. 1800.

It is clear that the drafters of this section, 28 U.S.C.A. § 1863(b)(4), did not envision emptying and refilling the master jury wheel after each general election. If they had, they would have said so. The only time, under 28 U.S.C.A. § 1863(b)(4) as the same was originally enacted, when the master jury wheel must be emptied and refilled is that time specified in the plan adopted by each district court. The Court cannot ignore the plain language of the Act nor the comments of the House Judiciary Committee. Defendants' argument loses sight of the fact that the obligation to use the most recent voter registration list arises when the district court plan goes into effect and at such times, thereafter, as the plan may require the emptying and refilling of the master jury wheel. If this were not true, then there would be no reason for the provision of 28 U.S.C.A. § 1863 (b)(4) to require that the plan provide for specific times thereafter when the master jury wheel should be emptied and refilled. This Court is under a duty to construe this legislation so as to give meaning to all its parts. Thus, the Court concludes that there was no substantial failure to comply with the provisions of the Plan or with the provisions of the Jury Selection and Service Act of 1968 in using the 1968 voter registration lists and that the use of the 1970 voter registration lists is not required by the terms of the Act or any reasonable construction thereof or the plan of this Court. These specific points were rejected for the same reasons in United States v. Ross, 468 F.2d 1213 (Ninth Cir. 1972); United States v. Matthews, 350 F.Supp. 1103 (Del.1972); United States v. Deardorff, 343 F.Supp. 1033 (N.Y.1971); United States v. Guzman, 337 F.Supp. 140 (N.Y. 1972), aff'd 468 F.2d 1245 (Second Cir. 1972).

■ Defendants' contention that the failure to empty and refill the master jury wheel as specified in the District Court Plan between July 1 and November 1, 1972 invalidates their Indictment is likewise ill founded. The reason is that the Plan's requirements were superseded by the provisions of PL 92–269; 86 Stat. 117 (April 6, 1972), which states in pertinent part:

"Sec. 3.(a) Each judicial district . . . shall not later than September 1, 1973, refill its master jury wheel with names obtained from the voter registration lists for . . . the 1972 general election. . . . Sec. 4.(a) Nothing in this Act shall affect the composition of any master jury wheel or qualified jury wheel prior to the date on which it is first refilled in compliance with the terms of section 3.(b) Nothing in this Act shall affect the composition or preclude the service of any jury empaneled on or before the date on which the qualified jury wheel from which the jurors' names were drawn is refilled in compliance with the provisions of section 3."

In this connection, the House Judiciary Committee states,

"Section 4 of the amended bill assures that master jury wheels and qualified jury wheels *in being prior to the first refilling in any district pursuant to the requirements of section 3 will continue to be used until that refilling has been effected.*" (Emphasis added). United States Code, Congressional and Administrative News, (1972), p. 2224.

The mandate of the amendment in effect overrode the requirements of the Plan as to emptying and refilling the master jury wheel and specifically directs that the present jurors selected at the date of this enactment, April 6, 1972, be used until refilling is effected in accordance with the new provisions, especially those lowering the age requirements from 21 to 18. Defendants' contention in this respect is without merit.

■ Defendants assert that 28 U.S. C.A. § 1867(f) gives them an absolute statutory right without any factual showing whatsoever to inspect the jury selection records. The statute on which they rely does not support such a right. 28 U.S.C.A. § 1867(d) prescribes the procedure necessary to the assertion of such a right. It states that:

"Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence."

In this connection, the House Judiciary Committee observed,

"The final basic safeguard against the dilatory use of challenges is contained in section 1867(d). It requires that the challenge motion be accompanied by a sworn statement of facts which, if true, demonstrate a substantial failure to comply with the statutory guide. This threshold requirement to a successful challenge will make it possible for the judge to review a challenge motion and swiftly dispose of it if it fails, on its face, to state a case for which a remedy could be granted." 2 United States Code, Congressional and Administrative News (1968) 1792, at p. 1806.

Where Defendants' argument has been presented to the courts, notwithstanding the dictum in United States v. Tijerina, 446 F.2d 675 at p. 681, n. 5 (Tenth Cir. 1971), it has been rejected by three courts, United States v. Deardorff, *supra*, United States v. Guzman, *supra*, and United States v. Guzman, 468 F.2d 1245 (Second Cir. 1972) and accepted by one court, United States v. Beatty, 465 F.2d 1376 (Ninth Cir. 1972). See also, Unit-

ed States v. Poindexter, 325 F.Supp. 786 (N.Y.1971). It is not clear from that opinion whether discovery was permitted or whether the movant was expected to produce independent evidence. Defendants' view that they have an absolute statutory right in the absence of an affidavit to inspect has been rejected in United States v. Guzman, 468 F.2d 1245, 1249 (Second Cir. 1972), United States v. Guzman, 337 F.Supp. 140 (N.Y.1972), *supra*, and United States v. Deardorff, *supra*. In United States v. Poindexter, 325 F.Supp. 786 (N.Y.1971), discovery was discussed, but it is not clear from that opinion whether discovery was permitted or the movant was expected to produce independent evidence of a nature sufficient to support a "less than persuasive" affidavit in order to authorize discovery. In United States v. Beatty, 465 F.2d 1376 (Ninth Cir. 1972), discovery was permitted without presentation of an affidavit. This Court does not agree with United States v. Beatty, *supra*, for the reason it ignores the plain provisions of 28 U.S.C.A. § 1867(d): There must first be a motion supported by a sworn statement of facts which if true, would show substantial noncompliance with the Jury Selection and Service Act of 1968.

Defendants have presented the motion, but no sworn statement of facts which if true, would constitute a substantial noncompliance with the provisions of the Act or of the Plan. It is necessary to have both and not merely the motion. This is the threshold requirement of which the House Judiciary Committee speaks. Defendants' affidavits presented in connection with their motion seeking discovery do not state facts which if true would constitute a substantial noncompliance with either the Act or the Plan of this District. Thus, their Motion need not be further considered. It has failed to pass the threshold test. This being the case, there is no necessity to put into operation the provisions of 28 U.S.C.A. § 1867(f).

Defendants' Motion to Reconsider is denied.