UNITED STATES of America, Plaintiff,

v.

Russell J. OFFLEY, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jacqueline BOWMAN, Defendant.

Crim. A. Nos. 73–149–M, 74–290–M.

United States District Court, D. Massachusetts.

Jan. 23, 1975.

Marshall Stein, Asst. U. S. Atty., Dept. of Justice, Boston, Mass., for plaintiffs.

Margaret A. Burnham, Burnham, Stern & Shapiro, Boston, Mass., for defendants.

*Memorandum and Order*

FRANK J. MURRAY, District Judge.

These cases are before the court on defendants' motions pursuant to 28 U.S. C. § 1867 to inspect the records of the clerk of this court pertaining to juror selection. Since the issues presented, the counsel, and the relief sought are identical, the motions will be disposed of together.

The defendants were indicted by grand juries in the District of Massachusetts whose members were selected under this court's jury plan devised to implement the Jury Selection and Service Act of 1968 (Act), 28 U.S.C. § 1861 et seq. The defendants seek dismissal of their indictments for failure to comply with the requirements of the Act and the Fifth and Sixth Amendments of the Constitution in selection of the grand jurors who indicted them. They seek discovery of the methods used in juror selection in support of their motions to dismiss.

28 U.S.C. § 1867(a) provides for a motion by a defendant to dismiss the indictment or stay the proceedings for failure to comply with the requirements of the Act in choosing the jurors. Section 1867(d) entitles a defendant, upon filing of a motion under section 1867(a) containing a sworn statement of facts, which, if true, would show substantial failure to comply with the Act, to an evidentiary hearing on his motion. The provisions of section 1867 are declared to be the exclusive means for challeng-

ing compliance with the Act. Finally, section 1867(f) provides in part: "The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers [as used by the clerk in connection with the juror selection process] at all reasonable times during the preparation and pendency of such a motion".

The legislative history indicates that Congress intended that ". . . the defendant in criminal cases . . . [is] allowed to challenge the [juror] selection procedures. But the provisions of the bill are designed to reduce the possibility that such challenge will be used for dilatory purposes". 1968 U.S. Code, Congressional and Administrative News, 1792, 1805. The legislative history does not explore the exact procedural mechanism by which a challenge may be made. However, from the plain text of the statute it is evident that, *where discovery is not needed* by a defendant to mount his challenge, he can file his motion to stay or dismiss accompanied by a sworn statement containing facts which facially show a substantial failure to comply with the statute. If the sworn statement is found sufficient, the court should grant an evidentiary hearing at which defendant may present testimony and documents, including information from the clerk's office records and employees. If the evidence presented sustains the claim, the court must grant the stay. A major check on the dilatory use of challenges is the "sworn statement" requirement for a hearing. As the legislative history states, "[t]his threshold requirement to a successful challenge will make it possible for the judge to review a challenge motion and swiftly dispose of it if it fails, on its face, to state a case for which a remedy could be

granted". 1968 U.S.Code, Congressional and Administrative News 1792, 1806.

The face of the statute also makes clear that Congress contemplated situations where a defendant challenging the juror selection procedures would need discovery in order to properly prepare his motion and the accompanying sworn statement. Section 1867(f) clearly allows inspection, reproduction, and copying of the clerk's records and papers ". . . at all reasonable times during the *preparation* and *pendency* of . . ." a motion to stay or dismiss. (Emphasis added.) In addition, the subsection forbids disclosure of the clerk's records except, *inter alia,* ". . . as may be necessary in the *preparation* or *presentation* of a motion . . ." to stay or dismiss. (Emphasis added.) Neither the plain text of the statute nor the legislative history discusses the mechanics of granting discovery, beyond allowing it to be had in preparation of a section 1867(a) motion.

The question of when discovery under section 1867(f) should be allowed has divided the circuits. Some have concluded that the language of section 1867(f) is absolute and discovery may be had as a matter of right upon motion by a defendant. United States v. Beaty, 465 F.2d 1376, 1381–1382 (9th Cir. 1972); *cf.* United States v. Tijerina, 446 F.2d 675, 681, n. 5 (10th Cir. 1971). Others have held that discovery is not a matter of right but rather may only be had upon filing a sworn statement under section 1867(d) sufficient to show substantial failure to comply with the Act. United States v. Grey, 355 F.Supp. 529, 535–536 (W.D.Okl.1973).[1] This con-

---

1. United States v. Guzman, 337 F.Supp. 140 (S.D.N.Y.1972), aff'd, 468 F.2d 1245 (2d Cir. 1972), and United States v. Deardorff, 343 F.Supp. 1033 (S.D.N.Y.1971), are cases where discovery was not allowed by the courts. In both of these cases the defendants moved, simultaneously with their § 1867(a) motions attacking juror selection, for § 1867(f) discovery. In both cases, the defendants' statutory challenge to juror selection attacked the facial compliance of

the juror selection plan in question with the provisions of the Act. Since the courts were able to evaluate and dispose of the challenges on their faces, no discovery would have been helpful or was needed. Therefore, the question of when a defendant can properly claim discovery was not reached by those courts.

In contrast to *Guzman* and *Deardorff,* the defendants at bar in the instant cases do not, by admission of their attorney, challenge

flict may soon be resolved by the United States Supreme Court, which has accepted review of the issue. Test v. United States, 486 F.2d 922 (10th Cir. 1973), cert granted, 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974).

A grant of discovery under section 1867 involves countervailing considerations. On the one hand, the section clearly contemplates allowing a defendant discovery in preparation of his subsection (a) motion. On the other hand, the legislative history evinces a concern to guard against dilatory use of the challenges. The plain text of the discovery subsection (f) simply states that discovery "shall" be allowed, without specifying any guidelines or limitations. Some courts have attempted to supply this omission by reading the "sworn statement" requirement of section 1867(d) into section 1867(f). *See United States v. Grey, supra.* To do so, however, is to require a sworn statement by defendant of the specific facts showing failure to comply before, and as a condition of, defendant's right to discovery of those facts. This approach appears to place too great a burden on the party seeking the discovery.

Consistent with the language and purposes of section 1867, the interests of those involved in the discovery process, that is, a defendant seeking access to information to prepare his motions, the Government in protecting itself against delay, and the clerk in protecting himself from unnecessary inspection of his records and papers with consequent disruption of his ordinary business, may be served by procedural steps which allow discovery, subject to a good faith showing by the defendant of reasonable need for discovery. Such need may be shown by facts which tend to establish the likelihood of substantial non-compliance with the provisions of section 1861 et seq. To reduce the possibility of dilatory tactics, the defendant obviously should be required to make a showing beyond mere demand for discovery to justify the inspection, but he cannot be expected to prove his claim on the merits in order to obtain discovery. The "good faith showing of reasonable need" standard propounded here does not place insurmountable burdens on defendant's discovery rights and yet provides a standard by which dilatory and needless discovery may be prevented by the court.

Applying this procedure to the instant cases, in general it should be observed that there has been no review of this court's jury plan since January 1973. That review addressed primarily the constitutional aspects of use of voter registration lists as the base for juror selection. The Circuit Council has suggested that the jury plan should be under continual scrutiny. Report of the District Court Panel on Jury Selection in the District of Massachusetts, 58 F. R.D. 501, 502–503 (1973). The defendants in the cases here seek to investigate the mechanics of the selection process in the clerk's office after the use of the voter registration lists. No such investigation by the court has occurred since the jury plan was approved. During the past two years the underrepresentation of blacks and young people (those under the age of approximately 28) in the panels of grand jurors and petit jurors called to serve in proceedings held by me has been clearly noticeable as a matter of observation. No attempt has been made, however, to maintain a record of either numbers or percentages.

The defendants have shown an affidavit of Professor Hayward R. Alker, Jr.,

the facial compliance of this court's jury plan with the Act, at least at this stage. Rather, they seek to go behind the face of the plan and challenge compliance with the Act on the basis of, *inter alia*, the excuse practices of the courts and clerk under the plan. *See* text *infra.* This court cannot evaluate the merits of the defendants' claims until defendants have had an opportunity to flesh out the substance of the claims based on discovery.

Thus the procedural posture in which the discovery issue is presented here differs from that in which it arose in *Guzman* and *Deardorff,* and the results are not inconsistent.

of Massachusetts Institute of Technology, after a study of the jury panels for this district of the calendar year 1970. Professor Alker has concluded that blacks, females, the young, and the poor are underrepresented on such panels and that such underrepresentation could reasonably be accounted for by the "excuse practices" of the courts, as well as "registration patterns" of voters. *See* Alker Affidavit, paras. 10–13, November 19, 1973, annexed to the motion in Criminal Nos. 73–149–M and 74–290–M. He thus suggests that the steps taken in selecting the jury panels may be in violation of the Act. This is precisely what the discovery sought is aimed at.

Defendants have argued that the percentage disparities between blacks, women, the young, and the poor in the population, and those on the juror lists, are too great; for example, for blacks there are 2.6% in the population but only 1.1% on the jury panels. Alker Affidavit, para. 11. It does not appear, if indeed the law does allow for it, that there are available any records or statistics showing the percentage of the total voter registration which is black. The Government has argued, and persuasively so, that the percentage disparities for blacks do not establish a prima facie case of discrimination under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). But even so, they are not insignificant, in that they may reflect an unintended gap between what the plan seeks to attain in the selection of jurors representative of a cross-section of the community, and what has in fact occurred under the execution of the plan in the composition of venires.

The above factors tend to show the likelihood of substantial non-compliance with the provisions of the Act, and make a sufficient good faith showing of reasonable need for discovery. Accordingly, the discovery sought should be granted, but a final word is required regarding the timeliness of defendants' motions. 28 U.S.C. § 1867(a) provides that a motion to stay or dismiss for non-compliance must be filed " . . . before voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier . . . ." Defendant Bowman filed her motions within seven days of her indictment, and thus her motions are clearly timely. Defendant Offley was indicted on June 26, 1973 but did not file his motions until April 26, 1974, and thus a delay of ten months exists and the Government has raised the issue of timeliness of his filing. Where the same attorney represents both of these defendants, the court will grant the discovery motions of Bowman and reserve decision on the question of defendant Offley's timeliness in filing his motions.

For the above reasons, it is hereby Ordered:

(1) That counsel for the defendants be allowed by the clerk of this court to inspect, reproduce, and copy at reasonable times during the preparation and pendency of their motions all records and papers pertaining to the selection of jurors, including, but not limited to, juror qualification forms, juror lists, and any reports made by or to this court pertaining to the selection or composition of juries, including excuses of jurors from service, with respect to the grand juries which returned the indictments against these defendants.

(2) That the contents of all records and papers inspected pursuant to this order shall not be disclosed by any party in violation of 28 U.S.C. § 1867(f).

(3) That the inspection, reproduction and copying of such records or papers shall be completed not later than 4:00 p. m. on February 6, 1975.