509 F.2d 737
 UNITED STATES of America, Appellee,
v.
Lawrence GEELAN, Appellant.
UNITED STATES of America, Appellee,
v.
Robert Silas MOORE, Appellant.
UNITED STATES of America, Appellee,
v.
Clarence RESSLER, Jr., Appellant.
UNITED STATES of America, Appellee,
v.
David B. SMITH, Appellant.
 Nos. 74--1048, 73--1869, 74--1074 and 74--1073.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1974.
Decided Dec. 31, 1974.
Rehearing and Rehearing En Banc
Denied Feb. 24, 1950.
Certiorari Denied June 2, 1975.
See 95 S.Ct. 2395, 2396.
 
 Patrick C. McCormick, Sioux City, Iowa, for appellants, Ressler and geelan.
 Daniel C. Galvin, Sioux City, Iowa, for appellant, Moore.
 Mayer Kanter, Sioux City, Iowa, for appellant, Smith.
 Gary Wenell, Asst. U.S. Atty., Sioux City, Iowa, for appellee.
 Before GIBSON, Chief Judge, and BRIGHT and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 These criminal appeals have been consolidated because they present one common question: whether the delay of the District Clerk[1] in implementing the 1972 amendments to the Jury Selection and Service Act of 1968 caused juries to be empaneled so contrary to law as to mandate reversal of convictions by such juries. Other non-common assignments of error will be considered separately.
 
 
 2
 In each of the consolidated cases a motion had been filed in which the defendants sought a stay of proceedings on the ground that the master jury wheel from which jurors would be chosen for their respective trials had not been refilled in accordance with the requirements of 28 U.S.C. § 1863 and Rule 6 of the Local Rules of the Northern District of Iowa. The motions were denied, juries were empaneled and the defendants were thereafter tried and convicted.[2]
 
 I.
 
 3
 In 1972, Congress amended the Jury Selection and Service Act of 1968[3] by enacting Public Law 92--269, the purpose of which was 'to change the minimum age qualification for serving as a juror in Federal courts from 21 years of age to 18 years of age.'[4] Public Law 92--269 provides in part that:
 
 
 4
 Each judicial district * * * for which a separate plan for random selection of jurors has been adopted pursuant to section 1863 of title 28, United States Code * * * shall not later than September 1, 1973, refill its master jury wheel with names obtained from the voter registration lists for, or the lists of actual voters in, the 1972 general election.
 
 
 5
 The qualified jury wheel in each judicial district * * * for which a separate plan for random selection of jurors has been adopted, shall be refilled from the master jury wheel not later than October 1, 1973.
 
 
 6
 The Northern District of Iowa had in effect a plan for the random selection of jurors pursuant to 28 U.S.C. § 1863, but at the time of these trials in mid- October, 1973, the master jury wheels had not been refilled as required by the 1972 amendment to the Act. The jury panels used in the trials of these appellants were drawn from a qualified jury wheel containing names drawn from the master jury wheel.
 
 
 7
 Appellants contend that since the mandates of Public Law 92--269 for jury selection had not been complied with at the time of their trials, the District Judge committed prejudicial error by denying their motions to stay the proceedings.[5]
 
 
 8
 Although the government concedes that Section 3(c) of Public Law 92--269 'was not literally complied with' it asserts that: (1) each appellant failed to meet the requirement of timeliness set out in 18 U.S.C. § 1867 and thereby waived his right to complain of the jury selection process used in his case, (2) the 'savings' clause of Public Law 92--269 permitted the old jury wheels to be used until they had been properly refilled, and (3) appellants have failed to show that any prejudice resulted from the process used to select jurors for their trials.
 
 A.
 
 9
 28 U.S.C. § 1867 provides the exclusive method by which a defendant in a criminal case may challenge compliance with the jury selection procedures of the 1968 Act. 28 U.S.C. § 1867(e). The pertinent provisions are as follows:
 
 
 10
 (a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.
 
 
 11
 (d) Upon motion filed under subsection (a) * * * of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. * * * If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.
 
 
 12
 In United States v. Williams, 421 F.2d 529 (8th Cir. 1970), this court specifically recognized the importance of a prompt challenge to the process of selecting jurors. We addressed a situation where appellant's counsel had waited until the day of the trial to complain of the composition of the jury when he possessed the necessary facts to make his complaint eighteen days earlier, and said:
 
 
 13
 We have held in several decisions that the right to challenge the jury panel may be waived and is waived if not seasonably presented. * * * Appellant's tardiness in asserting his challenge amounts to a waiver of that right in the instant case.
 
 
 14
 421 F.2d at 532.
 
 
 15
 Defendants were granted ten days in which to file pre-trial motions following their arraignment on September 17, 1973. There is no showing in the record that defendants were misled or that needed information was withheld from them. It required only a simple inquiry to ascertain that the master jury wheel had not been refilled by September 1 with names taken from the 1972 voter list, which would have included the names of 18 year-olds for the first time. A similar inquiry would have produced the fact that the names in the qualified wheel had not been refilled by October 1 with names in turn taken from a master jury wheel refilled in accordance with the 1972 amendment. The motions to stay proceedings were not filed until October 23, the date upon which the cases were set for trial. Since the defendants did not file their motions within seven days after they had discovered the noncompliance, or could have discovered it by the exercise of diligence, they are precluded under the statute from asserting that the trial court erroneously denied their motions because of the failure of the District Clerk to meet the statutory deadlines. 28 U.S.C. § 1867(a).
 
 
 16
 Our inquiry does not stop here, however, because appellants' challenge to the jury selection procedure has constitutional overtones. They suggest that the absence of names of 18 year-olds in the jury wheels deprived them of a jury representative of a cross section of the community in violation of their Fifth and Sixth Amendment rights.
 
 
 17
 Since the master jury wheel contained names from the list of people registered to vote in the 1968 election, it may fairly be said that in 1973 the youngest juror who could have been called for these trials would have been at least twenty-six years of age. To the extent that the delay of the clerk operated to exclude this group of younger voters from jury service, we must examine the effect of such exclusion upon these cases.
 
 
 18
 In United States v. Gordon, 455 F.2d 398, 401 (8th Cir.), cert. denied, 406 U.S. 970, 92 S.Ct. 2428, 32 L.Ed.2d 670 (1972), we said:
 
 
 19
 The Constitution does not require that every class, subclass or identifiable group must be represented on every jury list, but only that no systematical, intentional or other unlawful exclusion of persons or groups exist.
 
 
 20
 Put another way, '(t)he crux of the inquiry is whether, in the source used in the selection of juries, there has been systematic or intentional exclusion of any cognizable group or class of qualified citizens.' United States v. Guzman, 337 F.Supp. 140, 143 (S.D.N.Y.), aff'd, 468 F.2d 1245 (2d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973).
 
 
 21
 In October, 1973, the District was in the process of complying with the amendment to the statute. The cases herein under review were the last cases submitted to juries drawn from the 1968 list. The Supreme Court, when dealing with a different sort of challenge to a jury selection process, recently recognized that 'some play in the joints of the jury selection process is necessary in order to accommodate the practical problems of judicial administration' in complying with 28 U.S.C. § 1863. Hamling v. United States, 418 U.S. 87, 138, 94 S.Ct. 2887, 2917, 41 L.Ed.2d 590 (1974). Although the need for 'some play in the joints' is no excuse for a failure to comply with a Congressional mandate, the District was in the process of complying, and any claim of 'systematic exclusion' of newly enfranchised 18--20 year-olds from the jury rolls in the Northern District of Iowa is not supported by the record.[6]
 
 
 22
 Moreover, we have held that young adults 18--20 years of age do not constitute a cognizable group within the community whose exclusion from the jury rolls amounts to an error of constitutional dimensions. United States v. Olson, 473 F.2d 686, 688 (8th Cir.), cert. denied, 412 U.S. 905, 93 S.Ct. 2291, 36 L.Ed.2d 970 (1973). Other courts have held that 18--20 year-olds do not have a constitutional right to serve on juries.[7]
 
 
 23
 In summary, we find that the challenge to the jury panel based upon statutory noncompliance was not timely and was therefore waived. We reject the attack upon constitutional grounds because there has been no showing of a systematic exclusion of a cognizable group within the community. Under these circumstances the District Court's order denying a stay of proceedings was not error.[8]II
 
 Moore and Geelan
 
 24
 Appellants Moore and Geelan were convicted of selling merchandise of a value of $5,000 or more which had traveled in interstate commerce and which was known to have been stolen, in violation of 18 U.S.C. § 2315. Specifically, they were charged with selling quantities of a chemical fertilizer known as Atrazine--which had been stolen in Sioux City, Iowa--to a farmer in Chester, South Dakota.
 
 
 25
 Moore and Geelan contend that the District Court erred in overruling their motions for entry of a judgment of acquittal, made at the close of the government's case and at the close of the trial, since there was no clear and convincing evidence that the commodity which they delivered to Chester, South Dakota, on or about January 18, 1973, was Aatrex 80W Atrazine, as alleged in the indictment. We disagree.
 
 
 26
 The defendants opted at trial to present evidence on their own behalf, and we are therefore permitted to examine the record as a whole. See McGautha v. California, 402 U.S. 183, 215--216, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), vacated on other grounds, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972); United States v. Greene, 442 F.2d 1285, 1286--1287 n. 3 (10th Cir. 1971); United States v. Feldman, 425 F.2d 688, 692 (3rd Cir. 1970); United States v. Cashio, 420 F.2d 1132, 1134 (5th Cir. 1969), cert. denied, 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970); Viramontes-Medina v. United States, 411 F.2d 981, 982 (9th Cir. 1969); Cline v. United States, 395 F.2d 138, 144 (8th Cir. 1968); United States v. Carabbia, 381 F.2d 133, 138 (6th Cir.), cert. denied, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602 (1967); United States v. Haskell, 327 F.2d 281, 282 n. 2 (2d Cir.), cert. denied, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964). But see Maffei v. United States, 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (1972) (Douglas, J., dissenting from denial of certiorari); United States v. Rizzo, 416 F.2d 734, 736 n. 3 (7th Cir. 1969); Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893, 897--898 (1963).
 
 
 27
 At trial, appellant Robert Silas Moore testified on cross-examination as follows:
 
 
 28
 Q. But at the time you left for South Dakota did you know what was in the back of the van?
 
 
 29
 A. The first time I left?
 
 
 30
 Q. Yes.
 
 
 31
 A. I knew that he had business to take care of in South Dakota.
 
 
 32
 Q. And you had this van loaded down with a ton of Atrazine but you didn't know it was in there?
 
 
 33
 A. I didn't say I didn't know there was Aatrex in there because I did.
 
 
 34
 Q. You did know?
 
 
 35
 A. I didn't know how much, no.
 
 
 36
 Q. But you did know there was Aatrex Atrazine in the van?
 
 
 37
 A. Yes.
 
 
 38
 Q. When you left for South Dakota.
 
 
 39
 A. Yes.
 
 
 40
 Similarly, another co-defendant in the case below who is not a party to this appeal testified upon cross-examination:
 
 
 41
 Q. When you drove this truck to Chester, South Dakota, did you know what was in the truck?
 
 
 42
 A. Yes, I did.
 
 
 43
 Q. When you say you drove, are you talking about the first or second time, or both?
 
 
 44
 A. First time.
 
 
 45
 Q. Did you know what was in the truck?
 
 
 46
 A. Yes, I did.Q. What was it?
 
 
 47
 A. Atrazine.
 
 
 48
 Q. Did you go to Chester, South Dakota, a second time?
 
 
 49
 A. Yes.
 
 
 50
 Q. And did you go again with Geelan and Moore?
 
 
 51
 A. Yes.
 
 
 52
 Q. Tell the circumstances of that. How did you happen to go?
 
 
 53
 A. Bob (Moore) just asked me to ride along. I drove most of the way on that one, too.
 
 
 54
 Q. Do you know what was in that truck, the pickup, I guess it was, the second time?
 
 
 55
 A. Yes.
 
 
 56
 Q. What was in it?
 
 
 57
 A. Atrazine.
 
 
 58
 There was thus sufficient evidence before the jury from which it could find that the substance delivered to Chester, South Dakota, by appellants on or about January 18, 1973, was Aatrex 80W Atrazine. Other evidence established that the merchandise stolen, if Atrazine, had a value in excess of $5,000 and, taken together, the evidence warranted the jury in finding that this element of the offense was proven beyond reasonable doubt. No other trial errors were asserted on appeal.
 
 III.
 Smith and Ressler
 
 59
 Appellants Smith and Ressler were convicted of transporting a sawed-off shotgun in interstate commerce, having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g) and 924(a). They were also convicted of a conspiracy to violate the same statute. 18 U.S.C. § 371.
 
 
 60
 Smith and Ressler contend that the District Judge erred in refusing to suppress a shotgun discovered protruding from underneath a coat in the vehicle in which they were riding after it had been stopped by an Iowa Highway Patrolman. They charge that the officer violated their Fourth Amendment rights by stopping the vehicle and by looking inside the vehicle once it had been stopped.
 
 
 61
 In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court discussed the role of the Fourth Amendment in a confrontation between a citizen and a policeman investigating suspicious circumstances and said:
 
 
 62
 (I)n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.
 
 
 63
 392 U.S. at 21, 88 S.Ct. at 1880 (footnote omitted); see Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
 
 
 64
 In Carpenter v. Sigler, 419 F.2d 169 (8th Cir. 1969), we adapted this test to a police officer's routine investigation of an automobile traveling on the highway, saying:
 
 
 65
 A reviewing court must objectively evaluate the 'specific and articulable facts which, taken together with rational inferences from those facts' (sic) and determine: (1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related 'to the circumstances which justified the interference in the first place.'
 
 
 66
 419 F.2d at 171 (footnote omitted).
 
 
 67
 Our first inquiry must therefore be to determine whether stopping the automobile was reasonable under the circumstances.
 
 
 68
 Officer Naber, who testified both at the suppression hearing and at trial, was parked along Interstate Highway 29 when he observed the automobile in which appellants were riding approach his position. As it passed, he noticed that it had no license plate on the front bumper and a red and white license plate on the rear bumper. Since he knew that two states adjacent to Iowa at that time had red and white license plates and that both of the states required the plates to be affixed to both the front and rear bumpers of automobiles registered therein, Officer Naber decided to stop the car in order to make a routine check of its registration.[9] At trial he testified that while he does not regularly stop vehicles with only one license plate, he does so occasionally (two or three times a shift).
 
 
 69
 We have readily upheld the right of a police patrol to make an investigative stop of a motor vehicle traveling under suspicious circumstances, especially where state statutes authorize the officer to make routine investigations of licenses and motor vehicle registrations. E.g., Orricer v. Erickson, 471 F.2d 1204 (8th Cir. 1973); Carpenter v. Sigler, supra; Rodgers v. United States, 362 F.2d 358, 362 (8th Cir.), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454 (1966).
 
 
 70
 Similarly, the Seventh Circuit, in United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970), upheld the investigative stop of an auto displaying only one state license plate, on the rear bumper, where that plate differed only one digit from a license plate number on the daily 'hot sheet' list of stolen cars.
 
 
 71
 In checking the registration, Officer Naber discovered that the automobile was registered in the name of Deborah Galway. The defendants and one other male were the only persons in the automobile. In addition, Officer Naber testified that he had smelled alcohol on the breath of the driver. He saw some cans on the floor in the rear of the car and asked the passengers to get out of the car. He then walked to the right rear side of the car to observe the cans, at which time he saw through the open door the butt end of a weapon protruding from under a coat. The officer could not recall whether he opened the door himself or whether it was already open.
 
 
 72
 Of course, if the door were already open the gun was properly seized because it was in plain view. United States v. Johnson, 506 F.2d 674 (8th Cir. 1974). Assuming, however, that the officer himself opened the door, we think the officer had probable cause at such time to make a further investigation of the cans on the inside of the car to determine if the Iowa statute prohibiting the consumption of alcohol on a public highway[10] was being violated. The scope of the intrusion was thus 'reasonably related 'to the circumstances which justified the interference in the first place." Carpenter v. Sigler, supra, 419 F.2d at 171; see United States v. Mahanna, 461 F.2d 1110, 1113 (8th Cir. 1972); United States v. Cecil, 457 F.2d 1178, 1180 (8th Cir. 1972); United States v. Turner, 442 F.2d 1146, 1147--1148 (8th Cir. 1971); Nunez v. United States, 370 F.2d 538, 539 (10th Cir. 1967). See also Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966), holding that where police officers stopped a suspicious automobile which had committed no traffic violation and noticed a passenger in the car slide down in his seat as if to place something under the seat or on the floor, they were justified in shining a flashlight into the automobile and in seizing a gun whose barrel protruded from under the seat.
 
 
 73
 For the reasons stated, we affirm the judgment of conviction in each of the cases consolidated in this appeal.
 
 
 
 [1]
 Northern District of Iowa
 
 
 [2]
 Moore and Geelan were tried together, as were Smith and Ressler. Both juries were empaneled on October 23, 1973. Trials were on October 24--25 and October 23--24, respectively
 
 
 [3]
 28 U.S.C. §§ 1821, 1861--1869, 1871
 
 
 [4]
 1972 U.S.Code Congressional and Administrative News 2222
 
 
 [5]
 Appellants also urge that the District failed to comply with its own plan for random jury selection which required the master jury wheel to be refilled between July 1 and September 30, 1973. However, the provisions of Public Law 92--269 superseded the provisions of an individual district's plan. United States v. Grey, 355 F.Supp. 529, 535 (W.D.Okl.1973). For this reason we address in this opinion only the District's noncompliance with the Act
 
 
 [6]
 Appellants' heavy reliance on Abbott v. Mines, 411 F.2d 353 (6th Cir. 1969), for the proposition that they need not show any prejudice to be entitled to the relief they seek is misplaced. The Abbott case, which was not decided under the Jury Selection and Service Act of 1968, involved the 'wholesale exclusion of women,' a 'defined community group.' The Sixth Circuit held that this did constitute a failure to comply with the proper jury selection process and that no showing of prejudice was necessary to warrant a reversal. The court said:
 One of our functions as a Federal Appellate Court is to watch over jury selection procedures to guard against frustration of the congressional purpose behind them. * * * Excluding defined community groups from federal juries, whether this is done by jury commissioners or as in this case by the Court itself, results in injury to the jury system. The exclusion may or may not prejudice one of the parties. But that is not the question before us. We must eliminate any tendencies that undermine and weaken the institution of jury trial as it operates in federal courts. Thiel v. United States, 328 U.S. 217, 224, 66 S.Ct. 984 (90 L.Ed. 1181) (1946). Appellant is therefore entitled to a new trial by a jury drawn from a panel that was properly constituted.
 411 F.2d at 355. Because we have held that there was no exclusion of a defined community group from the juries in the instant case, appellants' contention that they need show no prejudice is without merit.
 
 
 [7]
 See, e.g., United States v. McVean, 436 F.2d 1120 (5th Cir.), cert. denied, 404 U.S. 822, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971); United States v. Tantash, 409 F.2d 227 (9th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 211, 23 L.Ed.2d 754 (1969); George v. United States, 196 F.2d 445 (9th Cir.), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656 (1952); United States v. Waddy, 340 F.Supp. 509 (S.D.N.Y.1971); United States v. Deardorff, 343 F.Supp. 1033 (S.D.N.Y.1971); United States v. Gargan, 314 F.Supp. 414 (W.D.Wis.1970), aff'd sub nom. Gast v. United States, 457 F.2d 141 (7th Cir.), cert. denied, 406 U.S. 969, 92 S.Ct. 2426, 32 L.Ed. 668 (1972)
 While the Act prohibits discrimination according to race, color, religion, sex, national origin or economic status in the selection of jurors, it does not prohibit age discrimination. See 28 U.S.C. § 1862.
 
 
 [8]
 Our holding should not be construed as condoning the failure of the District to comply with the mandate of the 1972 amendment, including its stated deadlines. We do not intimate a similar result under different factual circumstances
 In view of our holding, it is unnecessary to consider the government's alternative defense that the 'savings' clause (Section 4) of Public Law 92--269 permitted the old jury wheels to be used until they had been properly refilled. Our holding also disposes of the issue of prejudice as an alternate defense. See note 6 supra.
 
 
 [9]
 Officer Naber testified that he did not recognize the automobile license as an Indiana plate until he had already signaled it to stop. Since he further testified that he did not know Indiana required only one plate, this recognition is irrelevant
 
 
 [10]
 I.C.A. § 123.46 (Supp.1974)