UNITED STATES of America, Plaintiff,

v.

Whitaker Odelia COLEMAN, Defendant.

UNITED STATES of America, Plaintiff,

v.

Julia BLACK, Defendant.

UNITED STATES of America, Plaintiff,

v.

Willie FOSTER, Defendant.

Crim. Nos. 6–81420, 6–81329, 6–81452.

United States District Court,
E. D. Michigan, S. D.

March 29, 1977.

Gordon S. Gold, Sharon L. Edwards, Asst. U. S. Attys., Detroit, Mich., for plaintiff.

Thomas G. Werner, Southfield, Mich., for Coleman.

Gail Benson, Detroit, Mich., for Black.

Peter L. Conway, III, Bloomfield Hills, Mich., Neal Bush, Detroit, Mich., for Foster.

## OPINION

DeMASCIO, District Judge.

The Grand Jury, which returned the indictments in the above-captioned criminal cases, was impaneled on September 29, 1976. The Master Jury Wheel from which the names of the members of this Grand Jury were drawn was last refilled on July 13, 1973. This district's plan for the random selection of jurors in effect when the indictments in the instant cases were returned provided, in pertinent part:

> Master Jury Wheels will be emptied and refilled *every two years in conformance with this plan* as new voter registration information becomes available *or at more frequent intervals as deemed necessary by the Clerk of the Court* under the auspices of the Chief Judge. § 4.4 (emphasis added).

The defendants in the instant cases [1] now allege that the Grand Jury which indicted them was not constituted in accordance with the Jury Selection Plan then in effect in this district and that this alleged failure to comply with the district plan constituted a violation of the Jury Selection and Service Act of 1968 (the Act), as amended, 28 U.S.C. § 1861, *et seq.*, compelling dismissal of the indictments.

At an evidentiary hearing, the Clerk of the Court testified that, following the refilling of the Master Jury Wheel in July 1973, it was not again refilled until January 12, 1977. The Clerk further testified:

> [T]he filling and dumping of a master jury wheel in a computerized system is rather technical and rather difficult . . .
>
> Once we were into the system, we encountered continuous difficulties with the Chicago Office. We had very complicated logistics problems. We had a situation where personnel were continuously changing in Chicago and we were doing business with new people on occasions, on too frequent an occasion. And to use some naval philosophy and phraseology here, we were having a problem here just keeping afloat.
>
> As we were going down through the years of '74 and '75, because of these logistics problems, the administrative problems, the mailing problems, it seemed to me to be ridiculous to consider dumping and filling that master wheel because it's a very, as I say, complicated and large task. And I don't think that I ever arrived at a point in time where I said to myself, we're just not going to fill that wheel. Nor, was it discussed with the people in my office. Nor did I discuss it with the Court. (Tr. at 17–18.)

---

1. The government informed defendant Foster, by letter dated December 21, 1976, that an indictment was returned against him. Foster was not arraigned until January 4, 1977. His motion was filed on January 11, 1977. 28 U.S.C. § 1867 provides:

    > In criminal cases . . . within seven days after the defendant discovered or could have discovered by the exercise of due diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment . . . on grounds of substantial failure to comply with the provisions of this Title in selecting the grand . . . jury.

The government contends that Foster should have, by the exercise of due diligence, known of the grounds for the motion when he received the letter and that his motion is, therefore, untimely. We treat defendant's motion as timely filed. The government did not raise the issue of timeliness until after the oral argument on these motions and only two days before the evidentiary hearing. It would be unconscionable to hold the defendant to a strict standard of timeliness while simultaneously permitting the government to raise the issue at such a late date.

The Clerk of the Court further testified that he did not make any attempt to refill the Master Jury Wheel and that he did not discuss the "logistics problems" with any judge of this court or with the Administrative Office of the United States Courts. The Clerk of the Court did not testify that these "logistics problems" were insoluble, nor did he indicate that he discovered these problems in the midst of his attempt to refill the Wheel.[2] Thus, it is clear that there has been a violation of the District Jury Selection Plan. We are, therefore, called upon to decide whether this violation was a substantial failure to comply with the Act, thus requiring dismissal of these indictments, see 28 U.S.C. § 1867.

We find the Jury Selection and Service Act to be explicit in terms and precise in purpose. 28 U.S.C. § 1861 declares that all litigants in United States Courts shall be entitled to grand and petit jurors drawn from a cross section of the community and that all citizens shall have the opportunity to serve on such juries. 28 U.S.C. § 1862 prohibits discrimination in jury selection on the basis of "race, color, religion, sex, national origin or economic status." These two sections clearly set forth the underlying purposes of the Act. 28 U.S.C. § 1863(a) provides that each district shall devise and place into operation a written plan for the random selection of grand and petit jurors to achieve the objectives set forth in Sections 1861 and 1862. This district adopted the plan under scrutiny on October 19, 1973. Section 4.4 of that plan required that "Master Jury Wheels . . . be emptied and refilled every two years . . . ." The Master Jury Wheel, however, was neither emptied and refilled within two years of July 13, 1973 (the date the

Wheel was last refilled) nor within two years of October 19, 1973. It was not emptied and refilled until January 12, 1977.

The government contends that although there may have been a violation of the plan, there could not have been a substantial failure to comply with the Act as long as the Jury Wheel was refilled within four years. This argument relies on the following provision of the Act:

> The plan *shall provide for periodic emptying and refilling* of the master jury wheel *at specified times*, the interval for which shall not exceed four years. 28 U.S.C. § 1863(b)(4) (emphasis added).

Thus, the government argues that there must be a violation of the statute to warrant dismissal of an indictment and that a violation of the plan is not a *per se* violation of the statute.

The government's interpretation of the relationship between the statute and the plan disregards the statutory scheme, the plain meaning of the statute, and Congressional intent. It is clear that the district plan requires refilling of the Master Jury Wheel every two years. The plain language of § 1863(b)(4) indicates that the four-year period is a limitation and not the time period during which the Wheel must be emptied and refilled. The statute requires that the interval for refilling the Master Wheel be established in the local district court plan. The district court plan must be approved by a reviewing panel before it is effective. 28 U.S.C. § 1863(a). To say that a mere refilling within the four-year period, but beyond the two years specified in the plan, complies with the Act would be to sanction a *de facto* modification

---

**2.** At the evidentiary hearing, it became apparent that not all communities in the district have their voter registration lists prepared in a form readily adaptable for use in a computer. The "logistics problem" to which he referred was the task of mechanically key punching names selected from the voter registration lists onto computer cards. The names from the list are randomly selected for key punching. The names selected are determined by dividing the number of registered voters by the number of names required. The resulting quotient is used

to make the random selection. For example, if the resulting quotient is 54, every 54th name on the list is selected for insertion in the Master Jury Wheel. For those communities which are computerized, the computer is used to select the names for insertion into the Master Jury Wheel. We assume that the logistics problems referred to by the Clerk included the need to use court personnel to mechanically count off every 54th name for key punching. This process would have cost the government between $18,000 and $20,000 (Tr. at 37).

of the plan without approval of the reviewing panel. This is entirely inconsistent with the statutory scheme which is designed to select grand and petit jurors from a cross section of the community.

■ The legislative history, moreover, indicates that the plan is incorporated into the statute. When the statute was first enacted in 1968, Congress did not set a maximum interval for refilling the Jury Wheel. Thus, the district plan provided the interval. In 1972, the Act was amended to provide for a four-year maximum interval. The House Report indicates that the primary purpose behind the use of local plans was the necessity for flexibility to meet peculiar local needs. *See* 1968 U.S.Code Cong. & Admin.News at p. 1799. The statute directs each district to prepare a plan and implicitly requires that each district follow its plan. Further, it is clear that Congress did not differentiate between a statutory violation and a violation of the plan, but rather treated them as synonymous:

> There is room for a doctrine of harmless error. For example, if *the local plan* should call for 2,000 names to be placed initially in the master wheel and only 1,990 names were used, the reviewing court could find such a departure harmless. The combination of specificity and the substantial failure to comply feature will mean that judges will have readily available standards against which they can measure the procedures actually used. 1968 U.S.Code Cong. & Admin. News at p. 1805 (emphasis added).

Thus, a substantial violation of the plan is equally a substantial violation of the Act and warrants dismissal of an indictment.

■ It is equally clear that a defendant challenging a failure to comply with the plan (hence the statute) need show no prejudice. *United States v. Okiyama*, 521 F.2d 601 (9th Cir. 1975). Congress was most concerned that regular procedures be placed into effect which would ensure the representative character of juries and not that a defendant show prejudice ensuing from a statutory violation. Thus, all that need be shown by a defendant challenging an indictment is a substantial failure to comply with the provisions of the plan.

■ The government argues that the district plan was not violated because the voter registration lists were not available to the court in computer-compatible form and, therefore, the Clerk was not required to refill the Wheel. This argument is specious. Although the statute requires that voter registration lists be made "available," 28 U.S.C. § 1863(d), as does Section 4.4 of the plan, neither the Act nor the plan includes a provision that voter registration lists must be available in computer-compatible form prior to the refilling of the Wheel. Were we to accept the government's reasoning, the Jury Wheel would not require refilling until most or all of the communities in the district became computerized, and this eventuality may never come to pass. The Clerk testified that, by 1974, approximately 60–65% of the communities in this district were computerized.[3] It was the Court's obligation to obtain the voter lists in any available form, and then to refill the Wheel. The need for additional personnel to perform this task, and the minimal cost therefor, cannot excuse the failure to replenish the Wheel. *See* note 2, *supra*.

■ We have concluded that this failure constitutes a substantial failure to comply with the plan, and hence, the Act. At a minimum, the Wheel from which the names of the Grand Jury were drawn was eleven months overdue for refilling when the Grand Jury was impaneled.[4] We cannot

---

**3.** The Clerk further testified that even if 80% of the communities in this district had been computerized, he did not think that he would have refilled the Jury Wheel. Tr. at 27–28.

**4.** The Jury Wheel, as the defendants contend, should have been refilled in July 1975, two years following the last refilling. In *United States v. Narciso*, Crim.No. 7–80149 (filed February 24, 1977), however, the Honorable Philip Pratt held that the Jury Wheel did not have to be refilled until October 1975, two years after the *approval* of the plan. Whichever date we accept, it is clear that there has been a major deviation from the plan.

say that an eleven-month delay is an insubstantial failure to comply with the plan inasmuch as that time period is almost one-half of the total time interval between refillings specified by the plan. The Court, moreover, never made a good faith effort to comply with the plan's provisions. The cases which have found that a failure to comply with the Act was insubstantial involve good faith efforts to comply or minor deviations. *See United States v. Geelan,* 509 F.2d 737 (8th Cir. 1974); *United States v. McNeal,* 490 F.2d 206 (6th Cir. 1973). In our case, there was no effort to comply with the plan; rather, the Clerk of the Court, in a unilateral exercise of discretion, decided not to attempt the task. Neither our plan nor the Act makes provision for discretion. Congress believed that the "key man" system permitted excessive discretion in jury selection, so the 1968 Act provides a mechanical system of reliance upon voter registration lists and random selection. The committee report emphasized that the district plans for jury selection must ensure procedural regularity:

> The specific and comprehensive nature of the provisions of the act and the local plan will assure that there are readily available standards against which the selection procedures may be measured. Thus, procedural regularity is the measure of the validity of the selection system. It is an appropriate measure since the bill sets up a largely mechanical process in which the role of human discretion is minimized. . . . 1968 U.S.Code Cong. & Admin.News at p. 1805.

Such procedural regularity cannot be assured when discretion is permitted to vary the manner of compliance with the plan.

Nor can "logistics problems" justify such a substantial departure from the district plan's procedure. Thus, the magnitude of the deviation from the plan persuades us that there has been a substantial failure to comply with the Act. As a consequence, these indictments must be dismissed.

■ The identical issues presented in these cases were considered and decided by the Honorable John Feikens in *United States v. Tarnowski,* D.C., 429 F.Supp. 783 (filed March 17, 1977). I sincerely regret that I cannot adopt the holding in *Tarnowski.* A discussion of that opinion, I am sure, will clarify the reasons for my disagreement. In *Tarnowski,* the court concludes that "time is not of the essence of the Act." I am persuaded, however, that the time requirements set forth in the plan are as essential as any other provision. It is this very time requirement that assures the mechanical process that Congress intended and that guarantees the Master Jury Wheel will contain, at all times, a cross section of the community.[5] The Act certainly anticipates that time is an essential consideration. The Act provides that the interval for refilling the Master Jury Wheel is to be established in the plan. By amending the Act in 1972, Congress made it apparent that time was an essential feature in the plan by specifying that no plan would extend beyond four years without refilling the Master Jury Wheel. When our court, on December 8, 1976, amended the plan to provide for refilling the Master Jury Wheel every four years, the reviewing panel refused to approve the backdating of that amendment, no doubt believing the plan had conferred a statutory right. The court in *Tarnowski* reasons that ". . . Con-

---

5. In this regard, we note that the House Judiciary Committee Report included a letter from Deputy Attorney General Kleindienst which stated in part:

> **18-year olds are tried as adults, not only in the Federal courts, but in almost every State.**

> Since, as the Supreme Court has said, "the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a 'body truly representative of the community' and not the organ of any special group or class * * *," *Glasser v. United States,* 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680 (1942), a large segment of citizens who make up a representative class of persons entitled to vote in Federal elections should not be excluded from Federal jury service. 1972 U.S.Code Cong. & Admin. News pp. 2222, 2225.

gress intended that voter registration lists should be supplemented by other sources whenever the voter registration lists [do] not adequately reflect a cross section of the community." This district has declared, however, and the reviewing panel has agreed, that voter registration lists are a completely adequate source to assure a cross section of the community. Our plan specifies the use of voter registration lists and makes no provision for obtaining names from any other source. The plan specifically provides for refilling every two years *as new voter registration information* becomes available.

█ Next, in *Tarnowski*, the court concludes that a court must find that there has been a substantial failure to comply with the Act, and "the question cannot simply be—is there a substantial failure to comply with *the plan*?" Thus, the court in *Tarnowski* distinguishes between the statute and the plan. This district, however, formulated the plan because it was required by the statute to do so. I believe that the Act and the legislative history supports only the conclusion that the plan is incorporated into the Act and is one and the same.[6] Nor can I agree that the cases relied upon by Judge Feikens[7] support the *Tarnowski* conclusion that a defendant must show that the deviation resulted in a Master Jury Wheel which does not "mirror the structure of the community." 1968 U.S.Code Cong. & Admin. News at p. 1805. To require the defendant, as the court does in *Tarnowski*, to demonstrate that there has been a failure on the part of the Clerk to provide a fair cross section of registered voters in the Master Jury Wheel is to require the defendant to demonstrate prejudice. But the Act gives a defendant the right to rely upon the district plan. It is the plan that gives a defendant assurance that the Wheel will at all times contain a fair cross section of the community. When that plan is substantially violated, a defendant may rely on the fact that the Wheel is deficient for "procedural regu-

larity is the measure of the validity of the selection system." 1968 U.S.Code Cong. & Admin.News at p. 1805. Nor do I believe that the inquiry whether the Clerk's conduct .was deliberate or merely nonfeasance is not relevant. The simple fact is that there was a substantial failure to comply with the Act. 28 U.S.C. § 1867(a). I am persuaded that to sanction a failure to adhere to the plan is to sanction a *de facto* modification without the required approval of the reviewing panel contrary to 28 U.S.C. § 1863(a).

For these reasons, I remain persuaded that the indictments must be dismissed.

IT IS SO ORDERED.

---

6. See discussion on pp. 5 & 6, *supra*.

7. *United States v. Blair*, 470 F.2d 331 (5th Cir. 1972); *United States v. Ross*, 468 F.2d 1213 (9th Cir. 1972); *United States v. Gurney*, 393 F.Supp. 688 (M.D.Fla.1974); *United States v. Geelan*, 509 F.2d 737 (8th Cir. 1974).