OPINION OF THE COURT
Howard E. Goldfluss, J.
The defendant Theodore Goodman, charged” with acting in concert with two others, stands indicted for murder in the second degree (Penal Law, § 125.25) and possession of a weapon in the second degree (Penal Law, § 265.03).
The defendant moves for 17 items of relief in this omnibus motion. The court has disposed of items 2 through 17 in a separate memorandum opinion. We are concerned here with item No. 1, in which the defendant moves for an order dismissing the indictment. He alleges that the Grand Jury that returned this indictment was illegally and unlawfully constituted in that persons of Orthodox Jewish religion were systematically excluded or underrepresented and that the resulting prejudice to the defendant, who is Jewish, violated his constitutional rights, nullifying the indictment and mandating its dismissal. Specifically,, he contends that Orthodox Jews are a distinctive group or cognizable class, and that since the Grand Jury met "in the midst of the Jewish holidays, *929 between Rosh Hashonah and Yom Kippur,” Orthodox Jews were systematically excluded.[1]
The United States Supreme Court spoke on the issue of systematic exclusion in Taylor v Louisiana (419 US 522). It made the point that the "impact on the defendant” is the vital issue, and prevails over the "good faith in making individual selections.” In Taylor, while the court found that there was an invidious exclusion of women in jury selection because the jury system in Louisiana required women to volunteer before they were accepted as jurors, the court (p 538) made it clear that it imposed no requirement that petit jurors must "mirror the community and reflect the various groups in the population” (also, see, Stauder v West Virginia, 100 US 303) or is he entitled to a jury composed of his race or class (Swaub v Alabama, 380 US 202). He has only a right to a neutral jury, not to friends on the jury (Fay v New York, 332 US 261).
Nevertheless, a defendant is entitled to be indicted by a Grand Jury which is not the product of a systematic, deliberate, or arbitrary discrimination or exclusion with respect to the computation of the list from which such jurors are drawn (People v Chestnut, 26 NY2d 481).
Section 658 (since repealed) of the Judiciary Law provides that the source of names of persons eligible as jurors shall be, among others, the census enumeration, telephone directory, assessment rolls, and the voters’ registry list. In response to a specific written request by this court in order to be fully informed concerning the merits of this motion, the County Clerk of Bronx County, who also serves as Commissioner of
Jurors, submitted the following affidavit:
State of New York 1 SS •
County of Bronx j
Leo Levy, being duly sworn deposes and says:
I am the Commissioner of Jurors of Bronx County, being in charge of both petit and grand jurors.
Individuals are called at random from Election Board Registration Lists and New York City Income Tax Rolls to qualify for jury duty. When an individual appears to qualify for jury duty, he or she is not asked his or her religious affiliation and no record is every made of such affiliation.
At the time of jury qualification an individual is asked if he or she would want to be a grand juror. Thus, our grand jury system is voluntary. However, no questions are asked or records made of the person’s religion.
*930 The ballots used to pick the jurors for both petit and grand jurors has no reference as to religion. When said ballots, which are picked at random, are drawn; there is no way of knowing the persons religious affiliation.
The qualification and selection of all jurors, petit and grand jury, is done in accordance with the appropriate sections of the Judiciary Law and Rules and Regulations of the Appellate Division, First Department.
(signed) Leo Levy_
Leo Levy
Thus, the affidavit by the commissioner of jurors contends that in complying with statutory requirements and rules, there is "no way of knowing the person’s religious affiliation.”
Section 659 (since repealed) of the Judiciary Law requires that a questionnaire be executed and signed by the prospective juror, stating his qualifications in writing. The following is the questionnaire presently used in Bronx County in compliance with that section:
Juror Qualification Questionnaire
A person who knowingly makes a false statement of a material fact on this questionnaire is guilty of a Class A misdemeanor punishable by fine and imprisonment. (Penal Law. Sec. 210.45)
1. Name_2. Give any other last names
you have used_
3. Date of Birth 4. Place of Birth 5. Check one 6. Marital Status Mo. day year city county Mr. Ms. (check one)
_ _ _ Sgl. Mar. Wid.
7. Residence_8. Tel. No__
9. How many years at present address In New York State in Bronx County
10. Extent of education in years Primary H.S. College
11. If not American born, how became citizen?_
when and where naturalized?_
12. Did you register at last election?_13. Where did you live
then_
14. Occupation_15. Employment at present_
How long?_16. Business firm and address_
17. What other employment during past 6 years?_
18__
Spouse’s Name Spouse’s occupation Spouse’s firm address Telno
19. Have you ever been denied listing as a qualified juror or been stricken
from any list of jurors?_
20. Have you ever been convicted of a criminal charge?_
21. Have any judgments been entered against you in a civil court on
allegations of fraud or misconduct?_
*931 Please Print
Name_
Last First Middle initial
Address_
_Date of Birth_
22. Any judgements outstanding against you?_Nature?_
23. Do you have any - physical or mental infirmity impairing your capacity
to serve as a juror?-
24. If there is a certain month during which you wish to serve, enter it in
this box_
25. Have you any such views regarding the death penalty that would
prevent you from finding a defendant guilty if the crime charged be punishable by death?_
26. Have you ever filled out a questionnaire in Bronx County?_
27. Have you ever served as a juror?_Where and when?_
28. If the answer to any question from no. 19 to no. 23 is "yes”, give details
-The foregoing answers
Date Result Examined by are true in all
respects.
Signature _
Record of Jury Service
Served Served Served Date Revision Miscellaneous
J.D. 10-100M 702518(75) 346
It will be noted that there is no question among the 28 which even remotely refers to a prospective juror’s religious affiliation.
This court is aware, that the interests of justice would normally call for a hearing to give the defendant an opportunity to cross-examine the commissioner on the statements made in his affidavit, and to submit contrary evidence if he is in possession of any.
The burden is on the defendant to establish acts which would be of probable prejudice to the defendant (Akins v Texas, 325 US 398), and that burden is a heavy one, because even if it were established that there was an exclusion of an eligible race or class from Grand Jury service, systematic exclusion cannot be established by the mere absence of any members of that race or class from a particular jury or panel (People v Ferguson, 55 Misc 2d 711).
However, he must initially prove that a cognizable, identifiable class has been excluded, because if that is not proven *932 then exclusion would not be prejudicial, and a hearing would have no value. In United States v Guzman (337 F Supp 140), the Federal District Court set forth the criteria used to determine the cognizability of a class. They are: (1) the presence of some quality or attribute which defines or limits the group; (2) cohesiveness or attributes or ideas or experience which distinguish and limit the group; (3) a community of interest which may not be represented by other segments of society.
The defendant’s contention herein is that the cognizable and distinctive class which he claims has been systematically excluded is Orthodox Jews. He does not assert that Jews as a whole are excluded. To make the necessary determination, it is imperative to define Orthodoxy as it applies to the Jewish religion. Generally, Orthodox Jews are those who accept as divinely inspired the totality of the historical religion as it has been carried down in tradition, oral laws, and written laws as codified in the "Schulchan Aruch” (The Code of Laws), and its commentaries (see Orthodoxy, XII Encyclopedia Judaica, pp 1486-1493).
Orthodox Jews observe the teachings and unchanging principles of the "Halacha” (accepted religious law). Scholars count 613 "Mitzvos”, or commandments derived from the Torah, the Holy Scripture. Some of these are positive, some are negative, and the extent of one’s Orthodoxy could possibly be measured by the total amount of "Mitzvos” that are observed. Ideally, the totally Orthodox Jew would observe them all, but it is accepted that existence in the modern world makes such total compliance impossible. Therefore, he compromises, and any compromise may satisfy his own conscience, but could conceivably fall short in satisfying the conscience of his coreligionist who is equally zealous in seeking ultimate compliance. For example, observance of dietary laws could vary in approach and interpretation, as could observance of the Sabbath.
In practice, Judaic Law is primarily concerned with ethics, and the well being of society is its chief goal. Freedom of will is a basic concept, and each Jew bears the responsibility for his own religious and moral actions. When he contravenes the law, divine retribution is inevitable, because divine retribution is an essential part of Judaism, both as reward and punishment. These retributive aspects are all based on the degree of faithfulness with which the individual Jew has believed and *933 practiced the law, particularly in its ethical aspects. That degree of faithfulness is an individualistic approach, and no Jew can truly judge another as to his degree of Orthodoxy, because Orthodoxy is not in the eye of the beholder, but rests in the mind and heart of the beholden. It is a singular concept, not a collective one, and it negates any possibility of characterizing one who identifies himself as an Orthodox Jew as being part of a cognizable class.
Having so found, a hearing into the issue of systematic exclusion or underrepresentation of Orthodox Jews on the Grand Jury which found the indictment against the defendant Goodman would serve no purpose (see United States v Guzman, 337 F Supp 1490, supra) and the motion to dismiss the indictment for the reasons stated is denied on its face.

. For the purpose of this motion, defendant’s challenge to the Grand Jury will be considered in the same light as if it were a challenge to the petit jury, since the same standards are equally applicable (Matter of Alessi v Nadjari, 47 AD2d 189).